UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOHN TOMPKINS, aka JAY TOMPKINS; LISA AZAGIDI; and ELENI KONSTANTINOPOULOS,<br><br>Plaintiffs,<br><br>vs.<br><br>MASIMO CORPORATION, a Delaware Corporation; and Does 1 through 25, Inclusive,<br><br>Defendants. | Case No.: SACV 11-01435-CJC(RNBx)<br><br>ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND ENHANCEMENT AWARDS |

**I. Introduction and Background**

Plaintiffs John Tompkins, Lisa Azagidi, and Eleni Konstantinopoulos, on behalf of themselves and all persons similarly situated, (collectively, "Plaintiffs"), brought this action in state court against Defendant Masimo Corporation ("Masimo") on February 4, 2011. The case was removed to this Court on September 16, 2011 and the operative Second Amended Complaint ("SAC") was filed on June 11, 2012. (Dkt. No. 15.) In the SAC, Plaintiffs allege six causes of action arising from their relationship with Masimo as

-1-

clinical specialists or installers of Masimo's medical devices: (1) failure to pay overtime under the California Labor Code ("Labor Code"); (2) failure to provide meal and rest breaks under the Labor Code; (3) violation of California Business & Professions Code section 17200; (4) failure to pay overtime under the federal Fair Labor Standards Act ("FLSA"); (5) failure to provide meal and rest breaks under the FLSA; and (6) penalties pursuant to California's Private Attorneys General Act ("PAGA") of 2004. The parties reached a settlement following private mediation on April 27, 2012. The Court preliminarily approved the proposed settlement agreement on July 12, 2012. (Dkt. Nos. 24 [Order], 25 [Amended Order].) Plaintiffs now seek final approval of the class action settlement (with a claims release modification agreed to by the parties), attorneys' fees and costs, and an enhancement for themselves as class representatives. Masimo does not oppose the motion. For the following reasons, Plaintiffs' motion is **GRANTED**.

The settlement class is comprised of all individuals who performed services for Masimo as an independent contractor "per diem" clinical specialist or installer at any time between February 4, 2007 and July 12, 2012. (Pl.'s Mem. in Supp. of Final Approval of Class Action Settlement [Pl.'s Mem.] at 1.) Masimo will pay up to a total of $225,000 on a "claims made" basis. The settlement amount includes attorneys' fees for class counsel not to exceed $56,250 (25% of the total settlement amount), class counsel's costs and expenses, service payments to the three representative plaintiffs totaling $7,000, payment of $1,500 to the California Labor and Workforce Development Agency ("LWDA"), settlement administrator fees up to $10,000, and Masimo's portion of FICA, FUTA, and all other state and federal payroll taxes. The remainder of the settlement amount will be paid to class members who join this action and/or submit a valid claim form. The claims administrator mailed court-approved claims packets to all 334 potential class members on August 20, 2012 and also mailed reminder postcards to those who did not respond. The administrator has received 104 valid claims, one request for exclusion, and no objections to the settlement.

## II. Analysis

When the parties reach a settlement agreement prior to class certification, the Court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court will first assess the propriety of class certification, followed by the fairness of the settlement agreement including the release of claims, and then will examine the issues of attorneys' fees and costs, and class representative enhancements.

### A. Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) the four requirements under Rule 23(a) concerning numerosity, commonality, typicality, and adequacy, and (2) the requirement that the action fall within one of the three "types" of classes described under the subsections of Rule 23(b). In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3), which allows certification if "the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court previously concluded that Plaintiffs had presented sufficient evidence to show that the proposed class satisfied the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a) as well as the predominance and superiority requirements under Rule 23(b)(3). (Dkt. No. 24.) Having reviewed those elements again, the Court adopts its prior analysis with respect to class certification. Accordingly, the Court grants certification of the class for purposes of settlement.[1]

---

[1] Some of Plaintiffs' causes of action are brought under the FLSA. The requirements for class certification under the FLSA are distinct from Rule 23. An FLSA collective action may be maintained

### B. The Settlement

The Ninth Circuit has a " 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.' " *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)). Federal Rule of Civil Procedure 23 " 'requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.' " *Staton*, 327 F.3d at 959 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (emphasis omitted)). To determine whether this standard is met, a district court must consider a number of factors, including " 'the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the

---

by an employee on behalf of others who are "similarly situated." 29 U.S.C. § 216(b). This phrase "remains undefined in the Ninth Circuit," *Truath v. Spearmint Rhino Cos.*, No. EDCV 09-01316-VAP (DTBx), 2012 U.S. Dist. LEXIS 144816, at *15 (C.D. Cal. Oct. 5, 2012), but "whether a collective action is appropriate is within the discretion of the district court." *Leuthold v. Destination Am.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). The Court "must make a factual determination regarding the propriety and scope of the class and must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Pfohl v. Farmers Ins. Group*, No. CV 03-3080 DT (RCx), 2004 U.S. Dist. LEXIS 6447, at *9 (C.D. Cal. Mar. 1, 2004). Courts may also consider "(1) whether there is evidence that the alleged activity was part of an institution wide practice; (2) the extent of the similarities among the members of the proposed collective action, in particular whether the members all are challenging the same employment practice; and (3) the extent to which the members of the proposed action will rely on common evidence." *Rivera v. Solstice Capital Group, Inc.*, No. CV 07-1852 PSG (VBKx), 2008 U.S. Dist. LEXIS 110443, at *12 (C.D. Cal. Aug. 21, 2008). The Court finds that the Plaintiffs and the class are similarly situated. All of the class members worked in one of two positions under similar circumstances. Plaintiffs have identified a common, allegedly institution-wide practice of misclassifying "per diem" installers and clinical specialists as independent contractors instead of non-exempt employees. Because the class members are challenging the same employment practice, it is likely that Masimo has the same defenses against the class members. As Masimo has not opposed the class certification, there is no indication it is unfair. Accordingly, the Court certifies the class pursuant to both Rule 23 and the FLSA.

experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.' " *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). Having fully considered the *Staton* factors, the Court finds this settlement fundamentally fair and reasonable to the parties involved.

The relative strength of Plaintiffs' case and the risk, expense, and complexity of litigation, as well as the risk of maintaining class status, weigh heavily in favor of settlement.  The benefits provided to the class members are reasonable considering that there are "significant risks and delays of litigation that are presented by defenses and potential appellate issues that Masimo could assert." (Carlson Decl. ¶ 13.)   Plaintiffs state that "Masimo contests its liability in this action and has stated that it is prepared to vigorously defend Plaintiffs' claims if the action cannot be settled." (*Id*. ¶ 12.)  For example, Masimo contends that Plaintiffs were properly classified, they signed agreements stating they were independent contractors, and even if they are considered employees they would have qualified for the administrative exemption.  (*Id.* ¶¶ 13, 14.)  Plaintiffs may also face risks in maintaining class status throughout trial as the Court would undertake an individualized inquiry to determine whether class and collective action treatment is appropriate.  Accordingly, there is a strong possibility that class members would not achieve a substantially greater result through individual litigation than will be achieved through this settlement.

The amount offered in settlement is reasonable.  Under the terms of the settlement agreement, Masimo will pay a maximum of $225,000 before the deductions listed above.  The average amount of payment to each of the class members is $563.97 and the highest payout will be $3,530.55. (Morales Decl. ¶ 20; Carlson Decl. ¶ 19.)  Plaintiffs' experienced counsel attests that "the recovery for each Class Member is a reasonable

compromise of Masimo's total exposure." (Pls.' Mem. at 12.) In light of the risks involved and the uncertainty of Plaintiffs' success on the merits, this amount is reasonable.

Additionally, $1,500 of the total settlement amount is designated to be paid to the LWDA pursuant to Labor Code Section 2699(i). This amount is subject to court review and approval. Cal. Lab. Code § 2699(l). The Court finds that this amount comports with settlement approval of PAGA awards in other cases and is reasonable. *See*, *e.g.*, *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *35–36 (E.D. Cal. Nov. 27, 2012) (approving $7,500 payment to LWDA out of $2.5 million settlement); *Chu v. Wells Fargo Investments, LLC*, No. C 05-4526 MHP, 2011 U.S. Dist. LEXIS 15821, at *4 (N.D. Cal. Feb. 16, 2011) (approving PAGA payment of $7,500 to the LWDA out of $6.9 million settlement).

The settlement agreement appears to be fair in its terms and thoroughly negotiated. The settlement was concluded after an arms-length, ten-hour mediation presided over by mediator Jeffrey Krivis. (Carlson Decl. ¶ 10.) Both parties possessed sufficient information to enter into an informed agreement and extensive discovery was conducted. Masimo produced all relevant policies and procedures, independent contractor agreements, and related information. (*Id.* ¶ 7.) Plaintiffs provided documentation and information to their counsel, and class counsel retained an expert to analyze the information provided by Masimo. (*Id.* ¶8.) Further, class counsel has extensive class action experience, (*id.* ¶ 22), and has concluded that the settlement is "fair, reasonable, and adequate and that it is in the best interest of the Class Members," (*id.* ¶ 25). The reaction of the class members also suggests that the settlement is fair. Out of the 108 responses the claims administrator received, there were no objections and only a single request for exclusion. (Morales Decl. ¶¶ 11, 12, 17.)

The Court is also satisfied that the release of claims agreed to in the settlement as modified by the parties complies with state and federal law. The Court recently expressed concern that the claims release violated federal law, because it provided that California resident class members who did not opt-out of the settlement would be bound by all of the terms of the claims release, including the release of federal FLSA claims. (*See* Dkt. Nos. 33, 35.) However, the FLSA states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "Thus, a class member can only release her federal FLSA claims if she opts in, giving her consent in writing to become a party." *Apparicio v. Radioshack Corp. et al.*, No. CV 08-1145, 2009 U.S. Dist. LEXIS 49316, at *6–7 (C.D. Cal. May 21, 2009). In response to the Court's concern, the parties reached an agreement modifying the claims release. The settlement has been amended to provide that only those California resident class members who submit a claim form and a consent to join form will release their FLSA claims. (Dkt. No. 37 [Joint Response to Order Clarifying the Court's Concern] at 2.) Paragraph 16 of the Settlement Agreement now states in part that "claims under the federal Fair Labor Standards Act of 1938 ('FLSA'), as amended, 29 U.S.C. sections 201, *et seq.*, of Class Members *will only be released if they submit a consent to join form pursuant to this settlement*." (Dkt. No. 37 [Amendment] at 1(emphasis in original).) With this modification, the Court is satisfied that the release of claims is fair. Additional notice to the class regarding the modification is unnecessary as the class members may review the Court's Order and Judgment. This Order and the accompanying Order issued concurrently herewith contain the modified language which inform class members who have not opted-in or opted-out that they retain any FLSA claims they may have.

///

///

After considering the terms of the settlement, the Court finds that it is fair, reasonable, and accurate. Further litigation would involve significant risk and expense. The amount offered in settlement appears rational, and the parties settled the case after sufficient discovery to evaluate the merit of the class members' claims.

### C. Attorneys' Fees and Costs and Enhancement for Named Plaintiffs

A district court has the authority and the duty to determine the fairness of attorneys' fees in a class action settlement. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999). The amount of fees to be awarded rests in the court's sound discretion. *See Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The Ninth Circuit has approved fee awards between 3% and 40%, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002), and has found 25% to a benchmark of reasonableness in common fund settlements. *Hanlon*, 150 F.3d at 1029. The Ninth Circuit has approved percentage awards in common fund cases where the class of beneficiaries is sufficiently identifiable, the benefits can be accurately traced, and the fee can be shifted with some exactitude. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Class counsel applies for $56,250.00 in attorneys' fees, which is 25% of the maximum settlement amount. (Pls.' Mem. at 17.) The Court finds this amount to be reasonable as 25% is the benchmark percentage and there appears to be no reason to deviate from the standard. Class counsel also applies for $11,524.83 in costs, which includes court and mediation fees, computer research, expert fees, copying, delivery fees, and minimal costs for telephone, fax, and email. (Carlson Decl. ¶ 12.) The Court finds the costs to be reasonably incurred and Plaintiffs' request for costs is unopposed. Accordingly, the Court approves the payment of $56,250.00 in attorneys' fees and $11,524.83 in costs.

The named plaintiffs seek monetary enhancements for themselves.  Mr. Tompkins seeks $5,000 and Ms. Azagidi and Ms. Konstaninopoulos each seek $1,000.  A class action need not necessarily treat all class members equally.  *Cohen v. Resolution Trust Corp.*, 61 F.3d 725, 728 (9th Cir. 1995), *vacated and appeal dismissed*, 72 F.3d 686 (9th Cir. 1996).  However, "when a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness." *Id.* (*quoting Holmes v. Continental Can. Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983)).  All three named plaintiffs actively participated in this suit and risked their professional reputations.  Mr. Tompkins contacted class counsel, helped find the other named plaintiffs, met and communicated with class counsel, located and reviewed documents, and attended the mediation session.  (Tompkins Decl. ¶¶ 3, 4.)  Ms. Azagidi and Ms. Konstantinopoulos also communicated with counsel, located and reviewed documents, and were available by telephone throughout the mediation.  (Azagidi Decl. ¶ 2; Konstantinopoulos Decl. ¶ 2.)  Enhancement payments based on these actions are fair and reasonable.  Accordingly, the Court approves the payment of $5,000 to Mr. Tompkins, $1,000 to Ms. Azagidi, and $1,000 to Ms. Konstantinopoulos.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

DATED:     December 19, 2012

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE